UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA KLYMN
                Plaintiff,

vs.

MONROE COUNTY SUPREME COURT,
UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, OFFICE of the
MANAGING INSPECTOR GENERAL for BIAS
MATTERS, COSMAS GRANT, RONALD
PAWELCZAK, MARY AUFLEGER, ANN
TADDEO, CAROLYN GRIMALDI, MARGE
ALLEN, AMY FIELDS, and MATTHEW
ROSENBAUM,     Defendants.

COMPLAINT

JURY TRIAL DEMANDED

1. This is a complaint for damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC §§ 2000e, et seq., and 42 USC § 1983. Plaintiff also raises claims under the New York State Human Rights Law, NY Executive Law § 290, et seq., as amended.

2. As is set forth in detail below, Defendants discriminated against Plaintiff on the basis of sex, and retaliated against her in violation of state and federal law.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court by 28 USC § 1331 and 28 USC § 1343; supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court by 28 USC § 1367(a).

4. Venue is properly laid in the Western District of New York under 28 USC § 1396(b)

4

because all of the parties are located in the Western District of New York, and the actions complained of occurred in the Western District of New York

5. Plaintiff has exhausted administrative remedies.

6. A copy of the complaint filed before the Equal Employment Opportunity Commission (EEOC) on or about October 29, 2020 is attached hereto as Exhibit A.

7. A copy of the Right to Sue letter issued by the EEOC on April 21, 2021, is attached hereto as Exhibit B.

**PARTIES**

8. Plaintiff, REBECCA KLYMN is a woman.

9. Defendant UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK ("UCS") is made up of various levels of trial and appellate courts established by the Constitution and laws of the State of New York, and is an employer within the meaning of the relevant statutes.

10. Defendant OFFICE OF COURT ADMINISTRATION ("OCA") is a subdivision of Defendant UCS that includes Diversity and Inclusion and Human Resources, and is an employer within the meaning of the relevant statutes.

11. Defendant MONROE COUNTY SUPREME COURT is a trial court located in the Seventh Judicial District of the State of New York, and is an employer within the meaning of the relevant statutes.

12. Defendant OFFICE of the MANAGING INSPECTOR GENERAL for BIAS MATTERS ("OIG") investigates allegations of bias based upon, *inter alia,* race and sex, and that affect the workplace or the terms and conditions of employment of UCS personnel.

13. At all times relevant to this Complaint, Defendant COSMAS GRANT ("GRANT") was an employee of Defendant OIG.  He is sued in his personal and official capacities.

14. At all times relevant to this Complaint, Defendant RONALD PAWELCZAK ("PAWELCZAK") was the District Executive of the Seventh Judicial District of the State of New York.  He is sued in his personal and official capacities.

15. At all times relevant to this Complaint, Defendant MARY AUFLEGER ("AUFLEGER") was the Assistant District Executive of the Seventh Judicial District of the State of New York.  She is sued in her personal and official capacities

16. At all times relevant to this Complaint, Defendant ANN TADDEO ("TADDEO") was a Supreme Court Justice in Monroe County, New York.  She is sued in her personal and official capacities.

17. At all times relevant to this Complaint, Defendant CAROLYN GRIMALDI ("GRIMALDI") was head of Human Resources for Defendant OCA.  She is sued in her personal and official capacities.

18. On information and belief, at all times relevant to this Complaint, Defendant MARGE ALLEN ("ALLEN") was head of Human Resources at MONROE COUNTY SUPREME COURT.  She is sued in her personal and official capacities.

19. At all times relevant to this Complaint, Defendant AMY FIELDS ("FIELDS") was a Principal Court Analyst assigned to Human Resources at MONROE COUNTY SUPREME COURT.  She is sued in her personal and official capacities.

20. At all times relevant to this complaint, Defendant MATTHEW ROSENBAUM ("ROSENBAUM") was a Supreme Court Justice in Monroe County, New York.  He is sued in

his personal and official capacities.

## FACTS

21. At all times relevant to this Complaint, Plaintiff was employed by Defendants UCS and OCA at Defendant MONROE COUNTY SUPREME COURT.

22. Defendant ROSENBAUM entered upon judicial office on March 28, 2005.

23. From March of 2005 until December of 2019, Plaintiff was employed as Secretary to Defendant ROSENBAUM.

24. Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on approximately a monthly basis in 2005.

25. Plaintiff performed the acts alleged in ¶ 24 against her will.

26. Each of the instances alleged in ¶ 24 occurred in Defendant ROSENBAUM's judicial chambers.

27. Defendant ROSENBAUM told Plaintiff that performing fellatio upon him was part of her job, that he was stressed, and she was required to assist him in relieving his stress.

28. Defendant ROSENBAUM also threatened Plaintiff that if she wanted to keep her job she would comply with his demands for oral sex.

29. In 2005 Plaintiff was engaged in divorce proceedings.

30. Defendant ROSENBAUM also told Plaintiff that if she wanted to retain custody of her minor son, she would comply with his demands for oral sex.

31. In 2006, Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least thirty separate occasions.

32. Each of the instances alleged in ¶ 31 occurred in Defendant ROSENBAUM's

7

judicial chambers.

33. Plaintiff performed the acts alleged in ¶ 31 against her will.

34. In addition to the incidents alleged in ¶¶ 31, on or about November 14, 2006, Defendant ROSENBAUM vaginally raped Plaintiff in her home after work hours.

35. In 2007 Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least twenty separate occasions.

36. Each of the instances alleged in ¶ 35 occurred in Defendant ROSENBAUM's judicial chambers.

37. Plaintiff performed the acts alleged in ¶ 35against her will.

38. In addition to the incidents alleged in ¶¶ 24, 31 and 35, throughout 2005, 2006, and 2007, Defendant ROSENBAUM required Plaintiff to perform personal errands for himself and his family members during the workday.

39. In addition to the incidents alleged in ¶¶ 24, 31 and 35, throughout 2005, 2006, and 2007, Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others.

40. Defendant ROSENBAUM's comments and physical contact alleged in ¶ 39 were unwelcome to Plaintiff.

41. On January 10, 2007, Plaintiff spoke with Lisa Cammilleri, a Court Clerk who had previously worked for Defendant ROSENBAUM, and who was reassigned away from Defendant ROSENBAUM at that time, about the sexual harassment Plaintiff was enduring.

42. Ms. Cammilleri advised Plaintiff that there was nothing Plaintiff could do because Defendant ROSENBAUM was a judge, and no one would listen to the Plaintiff.

43. In early 2007, Plaintiff spoke to Robert Barnish in Human Resources about being assigned to another position.

44. Mr. Barnish advised Plaintiff that he would seek out other assignments for her.

45. On May 14, 2007, Plaintiff told Defendant TADDEO about Defendant ROSENBAUM's sexual demands.

46. Defendant TADDEO told Plaintiff that there wasn't much she (Taddeo) could do, other than conduct sexual abuse training.

47. Defendant TADDEO also told Plaintiff that, unfortunately, women had to endure sexual harassment from male judges because there was no way to have them reprimanded.

48. On November 20, 2007, Plaintiff met with Defendant ALLEN, who was then Head of Human Resources at Defendant MONROE COUNTY SUPREME COURT.

49. Plaintiff told Defendant ALLEN about Defendant ROSENBAUM's conduct, and asked for help.

50. Defendant ALLEN told Plaintiff that if Plaintiff was, in fact, complaining about Defendant ROSENBAUM, Defendant ALLEN would have no choice but to fire Plaintiff.

51. Defendant ALLEN also told Plaintiff that if Plaintiff were merely inquiring about "the process" to help someone else, that Defendant ALLEN would send Plaintiff information.

52. Plaintiff asked for information about the complaint process.

53. Defendant ALLEN sent Plaintiff an email with links to information about the Courts' Workforce Diversity Office, and the Office of the Special Inspector General for Bias Matters.

54. On November 21, 2007, Plaintiff completed a claim of discrimination using the form she had received, and mailed it to Defendant OIG.

55. Plaintiff never received any response to the complaint she mailed on November 21, 2007.

56. In 2008 Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least fifteen separate occasions.

57. Each of the instances alleged in ¶ 56 occurred in Defendant ROSENBAUM's judicial chambers.

58. Plaintiff performed the acts alleged in ¶ 56 against her will.

59. In addition to the conduct alleged in ¶ 56, in 2008, Defendant ROSENBAUM, also required Plaintiff to perform personal errands for him during work hours.

60. In addition to the incidents alleged in ¶¶ 56 and 59, throughout 2008 Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others.

61. Defendant ROSENBAUM's comments and conduct alleged in ¶¶ 56 and 60 were unwelcome to Plaintiff.

62. Between January 1 and May 31, 2009 Defendant ROSENBAUM compelled Plaintiff to perform fellatio upon him on at least five separate occasions.

63. Each of the instances alleged in ¶ 62 occurred in Defendant ROSENBAUM's judicial chambers.

64. Plaintiff performed the acts alleged in ¶ 62 against her will.

65. In addition to the conduct alleged in ¶ 62, in 2008, Defendant ROSENBAUM, also required Plaintiff to perform personal errands for him during work hours.

66. In addition to the incidents alleged in ¶¶ 62 and 65, throughout 2008 and 2009, Defendant ROSENBAUM also addressed Plaintiff using demeaning terms, commented inappropriately upon Plaintiff's clothing, and touched and hugged Plaintiff in the presence of others.

67. Defendant ROSENBAUM's comments and physical contact alleged in ¶ 62 and 66 were unwelcome to Plaintiff.

68. On June 1, 2009, Plaintiff refused Defendant ROSENBAUM's demand for oral sex and told him she would no longer respond to his demands for oral sex, nor acquiesce to his threats.

69. Thereafter, on a daily basis, in 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017, Defendant ROSENBAUM continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon Plaintiff's clothing, and address her by demeaning and inappropriate names such as "sweetie" and "honey."

70. Defendant ROSENBAUM's comments and physical contact alleged in ¶ 69 were unwelcome to Plaintiff.

71. Defendant ROSENBAUM also continued to require Plaintiff to perform personal errands for him, including performing secretarial work for Defendant ROSENBAUM'S Temple during work hours.

72. Plaintiff continued to seek other positions within Defendant UCS without success.

73. In 2010 Mr. Barnish told Plaintiff that he believed no one within Defendant UCS would hire her due to fear of Defendant ROSENBAUM.

74. In January of 2018, Plaintiff received Defendant UCS' updated form for filing a

complaint of discriminatory treatment.

75. Plaintiff submitted a complaint to Defendant OIG on January 8, 2018.

76. Plaintiff never received a response to the complaint alleged in ¶ 75.

77. Throughout 2018, and during the first ten months of 2019, Defendant ROSENBAUM continued to touch Plaintiff, put his arm around Plaintiff, commented inappropriately upon Plaintiff's clothing, and address her by demeaning and inappropriate names such as "sweetie" and "honey."

78. Defendant ROSENBAUM's comments and physical contact alleged in ¶ 77 were unwelcome to Plaintiff.

79. Throughout 2018, and during the first seven months of 2019, Defendant ROSENBAUM also continued to require Plaintiff to perform personal errands for him during work hours.

80. Beginning in June 2019, Defendant ROSENBAUM urged Plaintiff to take a leave of absence "to get her head on straight."

81. Aside from comments such as those alleged in ¶ 80, Defendant ROSENBAUM stopped speaking to Plaintiff altogether in July 2019.

82. On July 31, 2019, Plaintiff met separately with Defendant TADDEO, Defendant PAWELCZAK and Defendant FIELDS.

83. Plaintiff was told by each that they could do nothing to help her; each of them recommended that she take time off from work to use up her accrued time off, and apply for other jobs.

84. In August and September of 2019, Defendant ROSENBAUM was verbally abusive toward Plaintiff.

85. In August and September of 2019, Defendant ROSENBAUM encouraged or directed his staff to stop speaking to Plaintiff.

86. In August 2019, Plaintiff sought assistance from Defendants FIELDS and AUFLEGER.

87. After Defendant FIELDS met with Plaintiff, FIELDS sent Plaintiff a follow-up email, with a copy to Defendant ROSENBAUM, referencing the substance of their discussion.

88. Defendant ROSENBAUM's hostility toward and mistreatment of Plaintiff increased after Defendant FIELDS sent the email alleged in ¶ 87.

89. Defendants FIELDS and AUFLEGER told Plaintiff they could not assist her.

90. In August of September of 2019, Defendant AUFLEGER met with Defendant ROSENBAUM's staff and advised them that they needed to talk to Plaintiff about work.

91. After Defendant AUFLEGER spoke to Defendant ROSENBAUM's staff, the staff refused to work with Plaintiff.

92. Plaintiff requested a leave of absence.

93. On September 9, 2019, Defendant ROSENBAUM advised Plaintiff he would not approve her request for leave.

94. On or about October 19, 2019, Plaintiff submitted a request for a Family & Medical Leave Act (FMLA) leave directly to Human Resources, based upon a note from Plaintiff's doctor excusing her from work due to physical symptoms arising from stress due to a hostile work environment.

95. Plaintiff's physician initially approved a leave of absence to end on January 31, 2020.

96. On information and belief, Human Resources notified Defendant UCS' Work-

13

Safe office of Plaintiff's FMLA leave request on or about October 19, 2019.

97. On or about October 29, 2019, Plaintiff filed a complaint with the EEOC.

98. On November 8, 2019, Plaintiff received a telephone call from Connor Van Everen at Defendant UCS' Work-Safe office.

99. On information and belief, the source of such information being the New York Courts' website, the Work-Safe office's mission is to ensure the court system promotes and supports a safe work environment for its employees and members of the public.

100. Mr. Van Everen asked Plaintiff to submit a written description of her experiences working for Defendant ROSENBAUM.

101. Plaintiff submitted a detailed description of her situation to Mr. Van Everen.

102. On information and belief, Mr. Van Everen forwarded Plaintiff's complaint to Defendants PAWELCZAK and OIG.

103. On information and belief Defendant PAWELCZAK notified Defendant ROSENBAUM of Plaintiff's complaint.

104. On information and belief, the 2019 submission to Defendant OIG by Work-Safe was the third time a complaint about Plaintiff's harassment by Defendant ROSENBAUM was submitted to Defendant OIG.

105. On information and belief, Defendant OIG forwarded Plaintiff's Complaint to the New York Commission on Judicial Conduct.

106. On December 19, 2019, Plaintiff was interviewed by the New York State Commission on Judicial Conduct.

107. In December 2019, Defendant AUFLEGER notified Plaintiff that Plaintiff's job title was changing from Judicial Secretary to Court Analyst.

108. On December 28, 2019, Plaintiff was notified by a representative of the New York State Commission on Judicial Conduct that Defendant ROSENBAUM had agreed to resign from his judicial position, and that the resignation would end any further investigation.

109. On January 15, 2020, Plaintiff was interviewed by Defendant GRANT.

110. During the interview, Defendant GRANT asserted that Defendant OIG had "lost" Plaintiff's prior complaints.

111. Also, during the January 15, 2020 interview, Defendant GRANT suggested to Plaintiff that she had "asked for" the treatment she received because of how she dressed.

112. Plaintiff was on FMLA leave from October 29, 2019 to March 30, 2020.

113. In February of 2020, Plaintiff spoke to Defendant GRIMALDI.

114. Defendant GRIMALDI told Plaintiff that she (Grimaldi) would identify a job to which Plaintiff would be reassigned, and get back to Plaintiff.

115. Plaintiff heard back from Defendant GRIMALDI twice, in February and March of 2020.

116. On each of the occasions alleged in ¶ 115, Defendant GRIMALDI told Plaintiff that Defendant GRIMALDI had not yet located a specific assignment for Plaintiff.

117. Plaintiff did not hear back from Defendant GRIMALDI after the second call.

118. Beginning on March 31, 2020, Plaintiff was placed on sick leave pursuant to her doctor's direction.

119. On August 13, 2020, Judge Vito Caruso sent Plaintiff a letter on behalf of Defendant UCS, advising Plaintiff that Defendant OIG "has completed its investigation concerning your hostile work environment complaint . . . have treated this matter very seriously and have taken appropriate action."

120. Plaintiff used her accrued time, and was granted discretionary leave by Defendants through April 28, 2021.

121. By letter dated April 28, 2021, Judge Caruso advised Plaintiff that she was placed on involuntary leave effective April 29, 2021.

122. On or about April 28, 2021, William Hart, president of Plaintiff's Union advised her that there had been a position for her in her new title in Family Court, Monroe County since March of 2020.

123. Defendants had not notified Plaintiff of the job in Family Court between March 2020 and April 29, 2021.

124. Plaintiff's doctor released Plaintiff to return to work on May 17, 2021.

125. Plaintiff was scheduled for an independent medical exam ("IME") on June 16 and 21, 2021.

126. Plaintiff appeared for her IME as scheduled, and was examined.

127. As of the date of this Complaint, Plaintiff has not yet been cleared to return to work by Defendant UCS.

128. On information and belief, as of the date of this Complaint, Plaintiff has exhausted all of her accrued leave time.

129. Between 2005 and 2019, Defendants ignored the sexual discrimination against Plaintiff, discouraged her from complaining about the illegal treatment she endured, and ignored the complaints Plaintiff did submit.

130. In 2019, Defendants enabled Defendant ROSENBAUM to retire from his position, and to avoid any further investigation or disciplinary action against him.

131. From 2019 to the present, the remaining Defendants have delayed acting on

Plaintiff's complaint, and failed to inform Plaintiff of the progress of the investigation, and of efforts to remedy her situation.

132. From March 2020 to April 29, 2021, Defendants failed to notify Plaintiff of the existence of a position waiting for her in Family Court.

133. Defendants' actions alleged herein, extending from 2005 through the present, constitute a continuous, integrated violation of Plaintiff's right to be free from discrimination on the basis of her sex in violation of State and Federal law.

134. In order to make Plaintiff whole, the Court must examine all of the actions of all of the Defendants alleged herein in context, and address the continuing violation of Plaintiff's rights.

FIRST CAUSE OF ACTION AGAINST DEFENDANTS MONROE COUNTY SUPREME COURT, UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK, OFFICE OF COURT ADMINISTRATION, OFFICE OF THE MANAGING INSPECTOR GENERAL FOR BIAS MATTERS: DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

135. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 135 as though fully set forth herein.

136. As an employer, Defendants are responsible for making and enforcing an effective sexual harassment policy in order to protect all UCS and OCA employees from *quid pro quo* and hostile work environment sexual discrimination, and from retaliation for complaining of sexual harassment.

137. On information and belief, Defendants have established a policy that purports to prevent sexual harassment of employees of Defendants UCS, OCA and MONROE COUNTY SUPREME COURT.

138. As is set forth in detail herein, Defendants failed to enforce said sexual

harassment policy from 2005 until 2019.

139. Plaintiff submitted complaints of sexual harassment to Defendant OIG in 2007 and 2018.

140. As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of sexual harassment and stopping sexual harassment when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being harassed by Defendant ROSENBAUM from 2005 until 2019.

141. As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of retaliation and stopping retaliation when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being retaliated against by Defendant ROSENBAUM from 2007 until 2019.

142. On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

143. Defendants' actions violated Title VII.

144. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.


**SECOND CAUSE OF ACTION AGAINST DEFENDANTS COSMAS GRANT, RONALD PAWELCZAK, MARY AUFLEGER, ANN TADDEO, CAROLYN GRIMALDI, MARGE ALLEN, AMY FIELDS, AND MATTHEW ROSENBAUM:  DENIAL OF EQUAL PROTECTION OF THE LAWS IN VIOLATION OF 42 USC § 1983**

145. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 144 as though fully set forth herein.

18

146. As an employee of Defendant UCS, Plaintiff was entitled to a workplace free of sexual harassment and retaliation.

147. At all times relevant to this Complaint Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, FIELDS, and ROSENBAUM acted under color of state law with respect to the Plaintiff.

148. Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, FIELDS, and ROSENBAUM were, at all times relevant to this Complaint, legally obligated to comply with the laws of the United States that prohibit discrimination in the workplace on the basis of sex.

149. Defendant ROSENBAUM used his status as a high-ranking person acting under color of state law to coerce Plaintiff to engage in sexual acts with him against her will.

150. Defendant ROSENBAUM also subjected Plaintiff to unwelcome touching and inappropriate comments and forms of address on the basis of Plaintiff's sex.

151. Defendant ROSENBAUM also retaliated against Plaintiff after Plaintiff complained.

152. Defendants GRANT, PAWELCZAK, TADDEO, GRIMALDI, ALLEN, FIELDS, and AUFLEGER, each of whom was charged with the responsibility to act to prevent sexual harassment in the workplace, failed or refused to take any actions to prevent Defendant ROSENBAUM from sexually harassing Plaintiff and retaliating against her.

153. On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

154. Defendants' actions violated Title VII.

155. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

THIRD CAUSE OF ACTION AGAINST DEFENDANTS MONROE COUNTY SUPREME COURT, UNIFIED COURT SYSTEM OF THE STATE OF NEW YORK, OFFICE OF COURT ADMINISTRATION, OFFICE OF THE MANAGING INSPECTOR GENERAL FOR BIAS MATTERS: DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW

156. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 155 as though fully set forth herein.

157. As an employer, Defendants are responsible for making and enforcing an effective sexual harassment policy in order to protect all UCS and OCA employees from *quid pro quo* and hostile work environment sexual discrimination, and from retaliation for complaining of sexual harassment.

158. On information and belief, Defendants have established a policy that purports to prevent sexual harassment of employees of Defendants UCS and MONROE COUNTY SUPREME COURT.

159. As is set forth in detail herein, Defendants failed to enforce said sexual harassment policy from 2005 until 2019.

160. Plaintiff submitted complaints of sexual harassment to Defendant OIG in 2007 and 2018.

161. As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of sexual harassment and stopping sexual harassment when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being

harassed by Defendant ROSENBAUM from 2005 until 2019.

162. As is set forth in detail herein, employees of Defendants who were charged with the responsibility of investigating claims of retaliation and stopping retaliation when it occurred, failed or refused to take any actions to stop or prevent Plaintiff from being retaliated against by Defendant ROSENBAUM from 2007 until 2019.

163. On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

164. Defendants' actions violated the New York State Human Rights Law.

165. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS COSMAS GRANT, RONALD PAWELCZAK, MARY AUFLEGER, ANN TADDEO, CAROLYN GRIMALDI, MARGE ALLEN, AMY FIELDS, AND MATTHEW ROSENBAUM: DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW**

166. Plaintiff reasserts and realleges the allegations set forth in ¶¶ 1 through 164 as though fully set forth herein.

167. As an employee of Defendant UCS, Plaintiff was entitled to a workplace free of sexual harassment and retaliation.

168. Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN, FIELDS, and ROSENBAUM were, at all times relevant to this Complaint, legally obligated to comply with the provisions of the New York Human Rights Law that prohibit discrimination in the workplace on the basis of sex.

21

169. Defendant ROSENBAUM used his status as a high-ranking person acting under color of state law to coerce Plaintiff to engage in sexual acts with him against her will.

170. Defendant ROSENBAUM also subjected Plaintiff to unwelcome touching and inappropriate comments and forms of address on the basis of Plaintiff's sex.

171. Defendant ROSENBAUM also retaliated against Plaintiff after Plaintiff complained.

172. Defendants GRANT, PAWELCZAK, AUFLEGER, TADDEO, GRIMALDI, ALLEN and FIELDS, each of whom was charged with the responsibility to act to prevent sexual harassment in the workplace, failed or refused to take any actions to prevent Defendant ROSENBAUM from sexually harassing Plaintiff and retaliating against her.

173. On information and belief, Defendants' actions complained of herein were taken pursuant to a policy or practice designed and implemented to protect judges from discipline or any other adverse action in response to the judges' violation of laws prohibiting sexual harassment and/or sexual discrimination.

174. Defendants' actions violated the New York Human Rights Law.

175. As a result of Defendants' illegal actions, Plaintiff has suffered economic loss, loss of enjoyment of life, damage to her reputation, emotional distress and physical injury.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter Judgment:

a. Holding that Defendants have violated Plaintiff's rights under 42 USC §§2000e, et seq. and 42 USC §1983, and the New York Human Rights Law;

b. Holding that the Defendants have engaged in a continuing violation of Plaintiff's rights from 2005 to the present as alleged herein;

    c. Awarding Plaintiff her lost pay;

d. Awarding Plaintiff compensatory damages;

e. Awarding Plaintiff punitive damages to the maximum amount permitted by law;

f. Awarding Plaintiff pre-judgment and post-judgment interest to the maximum amount permitted by law;

g. Awarding Plaintiff reimbursement for lost pension, and Social Security, in an amount to be proved at trial;

h. Awarding Plaintiff attorney's fees and costs to the maximum amount permitted by law;

i. Enjoining Defendants from engaging in further discrimination against the Plaintiff;

j. Enjoining Defendants from: (i) subjecting employees to discrimination and harassment based on the sex; and (ii) retaliating against employees who engage in activity protected under title VII, and the New York Human Rights Law; and

k. Providing such other relief as the Court deems just and proper.

**Plaintiff demands a trial by jury on all matters triable by jury.**

Dated: July 16, 2021

*s/Lindy Korn, Esq.*
LINDY KORN, ESQ.
The Law Office of Lindy Korn, LLP
535 Washington Street, Ninth Floor
Buffalo, NY 14203
716-856-5676
lkorn@korn-law.com

*s/Anna Marie Richmond, Esq.*
ANNA MARIE RICHMOND, ESQ.
2500 Rand Building
14 Lafayette Square
Buffalo, NY 14203
716-854-1100
annamarierichmondesq@gmail.com